# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LORA J. PACE,<br><br>Defendant. | Criminal Action No.<br><br>2:16-CR-032-RWS (3) |

## ORDER

This case comes before the Court on Defendant Lora J. Pace's Motion for Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by Section 603 of the First Step Act ("Motion"). [Docs. 141, 147]. The United States opposes Defendant's Motion. [Doc. 146].

Defendant Pace seeks compassionate release based on serious medical conditions, namely, Type II diabetes, obesity (Body Mass Index of 35.7), and hypertension. [Doc. 141]. She contends that her medical conditions make her more vulnerable and susceptible to an adverse outcome if she contracts COVID-19.

In March 2017, Pace, along with her co-conspirators, was indicted and charged with conspiring, between August 1, 2015 and October 21, 2016, to possess

with intent to distribute multiple Schedule I and II controlled substances in violation of 21 U.S.C. §§ 841(a), 846, 841(b)(1)(B)(iii), and 841(b)(1)(C). [Doc. 42]. The indictment also charged fourteen (14) substantive drug trafficking offenses alleging violations of 21 U.S.C. §§ 841(a) and 841(b)(1)(C) and aiding and abetting in violation of 18 U.S.C. § 2. Pace was named in Counts Two through Seven, plus Counts Nine, Eleven, and Fourteen. [Doc. 42]. Pace entered a non-negotiated guilty plea to Count One charging conspiracy as well as all nine (9) substantive counts of distributing three (3) different kinds of synthetic cannabinoids. [Doc. 119; Presentence Report ("PSR") ¶¶ 2-15, 18]. Pace supplied the synthetic cannabinoids. The advisory guideline range was 108-135 months in prison. [Sentencing Transcript ("Tr.") 45]. On November 21, 2019, Defendant Pace was sentenced to 66 months in prison, to be followed by four (4) years of supervised release. [Doc. 119]. Pace is currently incarcerated at FCI Pekin, Illinois, and has served approximately a quarter of her sentence. According to Pace, her projected release date is September 23, 2023.

After considering the record, the parties' submissions, and the relevant policy statements issued by the Sentencing Commission, the Court finds that Defendant Pace demonstrates "extraordinary and compelling reasons" in support of the requested relief.

**Exhaustion**

"The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010). Following amendment by the First Step Act allowing a defendant to file a motion for compassionate release, the governing statute reads:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . .

18 U.S.C. § 3582(c).

Thus, Section 3582 mandates that an inmate must exhaust administrative remedies before seeking judicial relief. See, e.g., United States v. Kranz, 2020 WL 2559551, at *3 (S.D. Fla. May 20, 2020) (denying motion for compassionate release for failure to exhaust administrative remedies; concluding that "exhaustion is required when mandated by Congress" and cannot be excused or waived); see also United States v. Solis, 2019 WL 2518452, at *2 (S.D. Ala. June 18, 2019). The Eleventh Circuit has described the statutory prerequisite within § 3582(c) as "a

3

jurisdictional limitation . . ., noting [that] a district court has 'no inherent authority' to modify a sentence that has already been imposed." United States v. Brennan, 766 Fed. Appx. 911, 913 (11th Cir. 2019) (quoting Phillips, 597 F.3d at 1194-95).[1]

Pace represents in her Motion that she made her initial request for compassionate release to the Warden on April 7, 2020. [Doc. 141 at 11-12 & n.31, Exhibit D]. More than thirty (30) days have passed since Defendant made her original request to the Warden. The Court finds that Pace has, in fact, exhausted administrative remedies as to her request for compassionate release based on serious medical conditions and her medical conditions viewed in the context of the current coronavirus pandemic.

The Court turns to the merits of Defendant's § 3582 Motion.

---

[1] Whether administrative exhaustion in this context is characterized as jurisdictional or a claim processing rule that can be waived, courts applying § 3582 tend to agree that the intent of the statute is clearly to afford the BOP the opportunity, in the first instance, to consider compassionate release. See, e.g., United States v. Lepore, Case No. 1:15-CR-367-1-TWT, Doc. 336, at 3 (N.D. Ga. April 7, 2020); accord United States v. Johnson, 451 F. Supp. 3d 436, 438 (D. Md. 2020) (finding exhaustion jurisdictional, and stating that § 3582(c)(1)(A) "does not provide any exceptions to these exhaustion requirements, and this Court may not create one by judicial order"); United States v. Russo, 2020 WL 1862294, at **4-5 (S.D.N.Y. April 14, 2020) (finding administrative exhaustion requirement a non-jurisdictional claim-processing rule).

**Merits**

The compassionate release provision in § 3582(c)(1)(A) provides for a sentence reduction for a defendant based on "extraordinary and compelling circumstances," which is not defined in the statute. 18 U.S.C. § 3582(c)(1)(A). "The application notes to § 1B1.13 list three criteria for consideration as extraordinary and compelling circumstances under § 3582(c)(1)(A): (1) medical condition; (2) advanced age (at least 65 years old); and (3) family circumstances." United States v. Nasirun, 2020 WL 686030, at *2 (M.D. Fla. February 11, 2020) (citing U.S.S.G. § 1B1.13, cmt. n. 1(A)-(C)); and see Solis, 2019 WL 2518452, at **2–3 (citing, *inter alia*, 28 U.S.C. § 994 (authorizing the Commission to describe what should be considered extraordinary and compelling reasons for sentence reduction)).[2] There is also a general catchall provision. Id. n.1(D).

---

[2] The Application Note reads in pertinent part:

> (A) Medical Condition of the Defendant –
> (i) The defendant is suffering from a terminal illness (i.e., a serious physical and advanced illness with an end of life trajectory) . . . .
> (ii) The defendant is –
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process, that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

At the outset, Section 3582 requires the Court to consider any applicable factors within 18 U.S.C. § 3553(a). See 18 U.S.C. § 3582(c)(1)(A). The Sentencing Guidelines also require the Court to consider whether the defendant is a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g).[3] See U.S.S.G. § 1B1.13.

Title 18, United States Code, Section 3553(a) requires that the Court "shall impose a sentence sufficient, but not greater than necessary," to comply with the purposes of sentencing identified in paragraph (2) of the statute. The Section 3553(a) factors include:

> (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"
> (2) "the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;"
> (3) the sentencing guidelines;

---

U.S.S.C. § 1B1.13, app. note 1.

[3] There is no information in the record to indicate that Pace presents a danger to the community. See 18 U.S.C. § 3142(g).

6

> (4) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and
> (5) "the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553 (2018)); and see United States v. Chambliss, 948 F.3d 691, 693-94 n.3 (5th Cir. 2020) (quoting 18 U.S.C. § 3553(a)).

Regarding the nature and circumstances of the offense, the convictions in this case involved the distribution of synthetic marijuana, a substance generally considered to be more dangerous, and known to produce more dangerous reactions to the user, than natural marijuana. [PSR ¶ 23; Tr. 4-13]. The circumstances surrounding Pace's membership in the conspiracy were highly unusual in that Pace was contacted by someone who had been a customer of her youngest son's after her son, who had a previous conviction for possession of synthetic marijuana, abandoned his product in a storage unit on Pace's property. Pace was experiencing financial difficulty at the time and agreed to sell. [PSR ¶ 32]. Still, Pace's role in the conspiracy as supplier was integral. After the initial transaction, Pace made the synthetic marijuana in her home and either shipped the drugs to her co-conspirators or delivered them in person. [PSR ¶¶ 2, 32, 34, 79, 83]. Pace's advisory guideline range was determined to be 108-135 months, with her offense level being increased to 31 to account for the synthetic substance. [PSR at 29; Tr. 45]. The

Court finds that the nature and circumstances of the offense tilt in favor of the Government's position.

In terms of the history and characteristics of the Defendant, during the sentencing hearing, the Court described Pace's criminal conduct as an "aberration." [Tr. 63]. The Court varied downward from the advisory guideline range and imposed a custodial sentence of 66 months, citing personal characteristics, including Pace's age, that she was a mother, grandmother, and caregiver for her mother, that Pace had no prior criminal history, and that the likelihood of recidivism was low. [Tr. 62-64, 68-69]. The Court also considered the lack of empirical data supporting the conversion ratio used to account for the quantity of synthetic marijuana involved in the conspiracy. [Tr. 68-69]. The history and characteristics weigh in Defendant's favor.

As for the need for the sentence imposed, including the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," the balancing of these considerations is a close call. On one hand, Pace's Motion is brought only two (2) years post-sentencing. To date, Defendant Pace has only served around 20 months, or less than a third of her 66-month sentence. And Pace benefitted from a substantial variance at the time of sentencing. When imposing sentence, the undersigned explained that a sentence

below 66 months would not be appropriate in light of the seriousness of the offense, Pace's role as the supplier of controlled substances, and the length of time Pace participated in the conspiracy. [Tr. 63-70]. On the other hand, the Government concedes that "Pace does not appear to be a danger to others. BOP reports she has had no disciplinary incidents, and Pace is a low risk for recidivism." [Doc. 146 at 6 n.1]. Indeed, Pace's BOP pattern risk score classification is "Minimum." [Doc. 141, Exhibit F]. Thus, notwithstanding the seriousness of the offense, the Court presently finds that the need for individual deterrence is less compelling now than it was at the time of Defendant's original sentencing. In addition, Pace has taken advantage of BOP programming and opportunities for employment while incarcerated. [Doc. 141, Exhibit F]. Importantly, Pace has a support system in place and family to receive her upon release. [Doc 141, 147 at 3, 5].

While the need to deter others, promote respect for the law, and assure just punishment remain, the Court finds that the § 3553(a) factors do not preclude compassionate release.

**Serious Medical Conditions as "Extraordinary and Compelling"**

The Court further finds that Pace's serious medical conditions, considered in combination with the coronavirus pandemic and increased risk posed to Pace as a

result of her diabetes and obesity, present an "extraordinary and compelling reason" to reduce Pace's custodial sentence.

The Court has reviewed Pace's medical records and taken into consideration that Type II diabetes is a serious medical condition as contemplated by § 1B1.13, app. note 1(A). Likewise, Type II diabetes is one of the underlying medical conditions recognized by the CDC as placing a person at an increased risk if COVID-19 is contracted, as is obesity.[4] The CDC's evaluation of obesity as a risk factor has been broadened to include obesity as opposed to severe obesity since the filing of Defendant Pace's Motion. [Doc. 146 at 7 n.2; Doc. 147 at 2 n.1].

Pace contends that her overall health has deteriorated and, specifically, that her diabetes and weight have become more difficult to control since being incarcerated. [Doc. 141 at 2]. In her Motion, Pace represents that she has become insulin-dependent during the last year and now requires insulin injections to be administered by medical staff twice daily, whereas, at the time of sentencing, her diabetes was being managed with oral medication. [Doc. 141 at 2; Exhibit A]. Pace also complains that she does not receive her insulin injections at regular intervals. [Doc. 141, Exhibit D]. BOP medical records reveal that, between May

---

[4] *People Who Are at Higher Risk for Severe Illness*, CDC ONLINE, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited October 10, 2020).

2019 and March 2020 (the most recent medical records provided), increasing amounts of insulin were administered to Pace by BOP medical staff. [Doc. 142 at 58-72]. Here, notwithstanding its opposition to Pace's Motion, the Government agrees that Ms. Pace has been diagnosed with medical issues that substantially diminish her "ability to provide self-care against serious injury or death as a result of COVID-19 . . . within the environment of a correctional facility[.]" [Doc. 146 at 7]. The documented change in Pace's condition distinguishes Pace from others whose diabetes is being adequately managed in custody.

Finally, in July 2020, when Defendant's reply brief was filed, counsel reported that FCI Pekin had only one (1) documented case of COVID-19 at the facility. [Doc. 147]. The Court takes judicial notice that, as of the date of this Order, FCI Pekin's COVID-19 cases have increased exponentially to total 88 cases during a few months. See http://www.bop.gov/coronavirus (last viewed October 20, 2020). Therefore, the Court finds that the risk to Defendant Pace has increased such that the overall analysis weighs in her favor and supports her request for compassionate release.

In sum, Defendant Pace satisfies her burden of demonstrating extraordinary and compelling reasons to grant compassionate release.

**Conclusion**

The Court finds that Defendant's compassionate release request is due to be granted. Accordingly, it is **ORDERED** that Defendant Pace's Motion [Doc. 141] for Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) is **GRANTED**.

Defendant's term of imprisonment is **REDUCED to TIME SERVED**, followed by a term of supervised release of four (4) years under the same terms and conditions previously imposed, plus the following new special condition of supervised release, that Defendant shall serve her first **six (6) months** in **HOME INCARCERATION**.[5] Defendant shall abide by all the requirements of the home incarceration program, which may include the use of electronic monitoring or other location verification system. During home incarceration, Defendant shall be restricted to her residence at all times except for medical needs or treatment, court appearances, and other activities approved by the Court.

There being a verified residence and an appropriate release plan in place, this order is **STAYED** for **up to fourteen (14) days** to make appropriate travel arrangements and to ensure the Defendant's safe release. The Defendant shall be released as soon as appropriate travel arrangements are made and it is safe for the

---

[5] Ms. Pace's counsel was consulted by the Court and advises that Ms. Pace consents to the Court imposing this additional condition of supervised release.

defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen (14) days are needed to make appropriate travel arrangements and ensure the Defendant's safe release, then the parties shall immediately notify the Court and show cause why the stay should be extended.

Defendant is **ORDERED** to report to the probation office in the federal judicial district where she is authorized to reside within 72 hours of release from imprisonment, unless the United States Probation Office instructs Defendant to report to a different probation office or within a different time frame.

It is further **ORDERED** that the BOP shall release the Defendant from the custody of FCI Pekin upon medical clearance. However, given the circumstances of the pre-approved release plan, Defendant will be allowed to **SELF-QUARANTINE** upon release and will not be required to quarantine at the BOP.

The United States Attorney for the Northern District of Georgia is **DIRECTED** to notify the BOP, FCI Pekin, of the instant Order so that its provisions can be put into effect as quickly as possible.

The Clerk is **DIRECTED** to provide a copy of the instant Order to the United States Marshals Service and the United States Probation Department.

**SO ORDERED** this 20th day of October, 2020.

_____
**RICHARD W. STORY**
United States District Judge